# CHARLESTON.

## BLAIR *v.* SAYRE.

Submitted January 21, 1887—Decided April 9, 1887.

1. EVIDENCE—RECORD OF MARRIAGES AND BIRTHS.

    An abstract from the books of the County Court, containing a record of the marriages and births duly certified by the proper officer having the custody thereof, is *prima facie* evidence of the facts therein stated.

2. EVIDENCE—MARRIAGE-LICENSE—CONSTRUCTION OF STATUTE.

    Where the issue was, whether a married woman, who had exc-

cuted a deed, was at the time a minor, she may under sec. 27 of
chap. 63 of the Code introduce in her own behalf an abstract of
her marriage-license, which sets forth her age at that time.

3. EVIDENCE—EJECTMENT.

If in an action of ejectment evidence by the female plaintiff, that
she did not sign or acknowledge the deed, under which the de-
fendant claims title, be admitted without objection, the defendant
may rebut by evidence, that she received a part of the considera-
tion for the deed.

4. CERTIFICATE OF ACKNOWLEDGMENT, &c.—DEED—CONSTRUCTION OF
STATUTE.

In a certificate of the acknowledgement of a deed of a married
woman the words—"she acknowledged, that she had willingly ex-
ecuted the same, and does not wish to retract it"—are not a sub-
stantial compliance with the statute, which requires the certificate
to show, that "she *acknowledged* the same to be her act and *de-
clared*, that she had willingly executed the same, and does not
wish to retract it."

*C. E. Hogg* for plaintiffs in error.

*R. S. and C. L. Brown* for defendant in error.

JOHNSON, PRESIDENT :

This is an action of ejectment brought in the Circuit Court
of Jackson county in 1879 by Blair and wife against Mark
Sayre to recover a certain tract of land in said county.   The
defendant demurred to the declaration, and his demurrer
was overruled, and he pleaded "not guilty."   On the 8th
day of November, 1881, the issue was tried by a jury, and a
verdict for the defendant was rendered.   The plaintiffs
moved to set aside the verdict, which motion was overruled,
and the court entered judgment.   On the trial the plaintiff
took several bills of exceptions to the ruling of the court.
The first bill of exceptions was to the admission of certain
evidence ; the second to the refusal to admit certain evi-
dence; and the third certifies the facts proven.   To the judg-
ment the plaintiffs obtained a writ of error.

The defendant, to maintain the issue on his part and to
rebut evidence of the plaintiffs' tending to show, that, when
the deed from Blair and wife to the defendant offered in ev-
idence by the defendant, was executed, the said Nancy was
a minor, offered in evidence the record of the marriage of

the father and mother of said Nancy, which is in the following words: "Wirt County Clerk's Office.—I hereby certify, that the following is a true copy from the marriage-record of the aforesaid office—'March 29th, 1853, Kingsbury Dulin to Elizabeth Lee—April 10th, 1853, (married by A. Beatty)—Copy—Teste—O. L. Williams, Clerk County Court Wirt County, West Va.'"

The defendant further offered in evidence a copy of the record of births of the said county of Wirt showing the date of the birth of Henry A. W. Dulin and ——— Dulin, female, as certified by the said clerk.—" Wirt County Court Clerk's Office.—I hereby certify, that the following is a true copy from the record of births now on file in the office aforesaid, to wit:—' June 27th, 1855, Henry A. W. Dulin, father, Kingsbury Dulin, mother, Elizabeth Dulin,—Sept. 6th, 1857, ——— Dulin, female; father, Kingsbury Dulin; mother, Elizabeth Dulin.'—I further certify, that the above blank named Dulin, female, was born alive, as shown by said record.—Given under my hand this 25th day of July, 1881,— O. L. Williams, Clerk County Court Wirt County, West Va."—

To the reading of the said copies and each of them the plaintiffs objected, which objection was overruled, and the said copies were permitted to be read to the jury, except the words in the last certificate:—" I further certify, that the above ——— named Dulin, female, was born alive, as shown by said record,"—which said words were not permitted to be given in evidence to the jury.

The defendant further offered to prove by his own evidence and the evidence of one Cherry, that the consideration for the land mentioned in the deed from plaintiffs to defendant, being the land in controversy, had been fully paid by the defendant to the plaintiff, E. F. Blair; but that the consideration was paid in lumber, with which a house was built on the female plaintiff's land, in which house the plaintiffs lived. To all which evidence the plaintiffs objected, and the court overruled the objection and permitted all the said evidence to go to the jury, to which the plaintiff excepted.

Section 14 of chapter 63 of the Code provides for the issuance of marriage-licenses by the clerk of the County Court

and the return thereof to his office. The 15th section of the same chapter provides:—" The clerk of the County Court, to whom such license and certificate shall be returned, shall file and preserve the same in his office, and within twenty days after receiving the same record a full abstract thereof in his register of marriages, and the minister's certificate and the name of the person signing the certificate, and make an index of the names of both the parties married, which may be done by additions in appropriate columns to the record made at the time of issuing the license."—The same chapter requires the assessor to make an annual registration of the births and deaths in his district. After he has made out his books and returned them to the office of the county clerk, section 32 requires such clerk to " enter upon the record a full abstract of the contents of the said books, containing a record of births, in said register of births, setting forth in convenient tabular form all the circumstances hereinbefore required to be recorded with reference to the assessor's books," &c. Section 29 is as follows: " The said book to be kept by the clerks of the County Courts and copies or any part thereof certified by the clerk lawfully having the custody thereof shall be *prima facie* evidence of the facts therein set forth in all cases." Such are the provisions of the statute now, and, when the records were made, which we are now considering, they were substantially the same. (Acts 1852–3; Code 1860, chap. 108, p. 526). Section 28 of chap. 108 is in the same words as section 27 of chapter 63 of the present Code, which we have referred to. There can be no doubt, that under the statute the abstract of the records of marriages and the abstract of the records of births were both admissible in evidence.

But was the evidence, that the plaintiffs had been paid for the land admissible? It is insisted by counsel for defendant in error, that it was admissible, for the purpose, for which it was introduced. The counsel says:—" The plaintiff, Nancy J. Blair, in her evidence to the jury denied any knowledge of the deed, which statement was calculated to prejudice the jury in her favor ; and, to counteract this statement, the defendant gave evidence, that she had paid to herself part at least of the consideration for the land in materials for the

house in which she then lived, showing that her pretended
ignorance of the transaction was false."—It is true, in the
certificate of facts it is shown, that Nancy J. Blair did tes-
tify, that she never signed the said deed nor acknowledged
it. She also said, she had positively refused to do either.
This evidence was admitted without objection. We will not
here consider, whether such evidence was or was not ad-
missible. It was before the jury, and, to rebut it, the de-
fendant offered in evidence the fact, that Mrs. Blair had
herself received a part at least of the consideration, for
which the land was sold. It seems to us, that under the
circumstances this evidence was proper.

In the second bill of exceptions it appears, that the plain-
tiffs, to maintain the issue on their part, offered in evidence
the record of the marriage showing, when they were married,
and what was the age of the female plaintiff at that time,
which record is as follows :—"Jackson County Clerk's Office,
Dec.[ 5th, 1876.—Marriage-license issued to Elihue F. Blair
aged 27 and Miss Nancy Dulin aged 17 years, both of Jack-
son county, West Va.—Teste—J. L. ARMSTRONG, Clerk."—
The defendant by counsel objected to said marriage-record
going in evidence to the jury, and the ·objection was sus-
tained, and the plaintiffs excepted. It is insisted, that this
ruling was correct, because the return of the marriage was
not the the best evidence of Mrs. Blair's age, which the na-
ture of the case would admit. The clerk issuing a marriage
license, it is said, requires information only, that the parent
is willing, the age of the party being in such case immaterial
the certificate of marriage is as to the age of the party mere
hearsay evidence. The statute declares : "It shall be the
duty of every clerk of every county issuing a marriage li-
cense to ascertain from the party obtaining the same *and to
make a record* thereof before delivering the said license, as
near as maybe, the full names of both parties, *their respec-
tive ages* and their places of birth and residence." As we
have before seen in considering the first bill of exceptions,
the clerk was bound to make an abstract of these facts in a
book, and the 27th section provides that the said book  *  *
or any part thereof certified by said clerk lawfully having
the custody thereof shall be *prima facie* evidence of the facts

therein set forth in all cases." It is objected, that this evidence is mere hearsay. This would be a good objection but for the statute; but by this statute the objection is entirely removed. The record is by the statute made *prima facie* evidence only and of course can be contradicted, if untrue. In the face of the statute the fact, that it was a statement of the female defendant made in her own behalf, is no objection. The statement was not made with reference to this case; and if it had been, that would make no difference. The other side might show, if they could, that the representation of her age was false. We cannot confine the section to evidence directly proving the marriage, birth or death, but it is *prima facie* evidence of any and all facts required by law to be stated therein; and it is primary and not secondary evidence (Woods, J., in *Battin* v. *Woods* 27 W. Va., 58.) The court erred to the prejudice of the plaintiffs by refusing to admit the evidence.

Did the court err in overruling the motion for a new trial? As to the ground of surprise in the reading of the depositions of Lee and Reed and of after-discovered evidence we will not consider the question here as it can not arise on another trial. Ordinarily we will not say anything as to the sufficiency of the evidence or any part of it, when a new trial is to be had; because it might prejudice the party in the new trial. Neither will we consider the question, which would have arisen, had no error been found in the rulings during the trial, that is, whether we would consider on the motion for a new trial the legal effect of the deed from Blair and wife to Sayre, on which alone Sayre depends for his title, so far as the record discloses, it appearing from the bills of exceptions, that the deed was admitted without objection. But as the case will have to go back for a new trial, and as objection will then certainly be made to the admission of the deed on the ground insisted on here, that the certificate of acknowledgment is fatally defective, we think it our duty under the constitution and our own decisions to pass upon the validity of that acknowledgment. If it is bad, the defendant may have another and better title, which he can produce. If it is good, he will know, that he can safely risk his case on that deed.

Is the acknowledgment fatally defective?—The require-
ment of the statute is, that the certificate shall contain
words to the following effect:—"And being examined by ·
me privily and apart from her husband and having the said
writing fully explained to her, she the said —— *acknowl-
edged the said writing to be her act* and declared, that she
had willingly executed the same and does not wish to re-
tract it." (Code, chap. 73, sec. 4.) The certificate here is:—
"I further certify, that Nancy J. Blair, wife of the said E. F.
Blair, being examined by me privily and apart from her
said husband and having the writing aforesaid fully ex-
plained to her, she, the said Nancy J. Blair, *acknowledged*,
that she had willingly executed the same and does not wish
to retract it." It is here insisted, that this certificate is a
substantial compliance with the statute. It is admitted, as
contended by counsel, that, if by any reasonable interpre-
tation of the language used in the certificate, taking the
whole certificate together, it sufficiently appears, that she
was examined privily and apart from her husband, and that
during such privy examination the writing was fully ex-
plained to her, and that she then acknowledged the said
writing to be her act, and then .declared, that she had will-
ingly executed the same and does not wish to retract it, the
certificate is sufficient, and the title under the deed passed
to the grantee.

The following authorities are cited to show, that the cer-
tificate in question is a substantial compliance with the stat-
utory requirement: *Langhorne* v. *Hobson*, 4 Leigh 225; *Tod*
v. *Baylor*, Id. 498; *McClanachan* v. *Siter*, 2 Gratt. 280;
*Dennis* v. *Tarpenny*, 20 Barb. 371; *Dundas* v. *Hitchcock*, 12
How. (U. S.) 256; *Dury* v. *Craig*, 5 Wall. 795; *Belcher* v.
*Weaver*, 46 Tex. 292.

In *Langhorne* v. *Hobson* the certificate ·was as follows:
"In obedience to the within commission to us directed we
have personally waited on the within named Susannah
Langhorne, wife of the within named William Langhorne,
and examined her privily and apart from her husband; and
she, the said Susannah, acknowledged the deed hereto an-
nexed to be her act and deed, and declared, that she did the
same freely and voluntarily without the persuasion or threats

of her said husband, and also relinquished her right of dower in the land within mentioned conveyed by the said deed, and is willing that the same with this her acknowledgment should be recorded in our County Court of Cumberland." The statute at that time required, when a commission was issued, of those receiving their authority thereunder, "to examine her privily and take her acknowledgment, the wife being examined privily and apart from her husband by these commissioners, and shall declare, that she willingly signed and sealed the said writing, to be there shown and explained to her by them, and consenteth, that it may be recorded; and the commissioners shall return with the commission and thereunto annexed a certificate under their hands and seals of such privy examination by them and of such declarations made and consent yielded by her." The court below held the certificate sufficient, and the Court of Appeals without any opinion affirmed the judgment. It does seem to me, that this was a substantial compliance with the statute.

In *Tod* v. *Baylor* it was held, that the certificate showing on its face, that the *feme* made her acknowledgment of the conveyance of the land contained in the conveyance thereto annexed freely and voluntarily, and that she was willing, that the same should be recorded, without stating, that the *feme* had declared, that she had willingly signed and sealed the deed, and without stating, that it was shown and explained to her by the commissioners, if the *feme* had in fact signed the deed, such certificate of privy examination is substantially a compliance with the requisitions of the statute and good, and the *feme* is bound by the deed; but, if the *feme* had *not signed* the deed, it was insufficient. At this time the statute did not require the certificate to show, that the deed was explained to the wife. (Carr, J., p. 508.)

In *McClanachan* v. *Siter* the certificate was:—"She, the said Virginia A., having been by us first made acquainted with the contents of said deed and examined separately and out of the hearing of her said husband, whether she executed the same freely and voluntarily and without any compulsion or undue influence of her said husband or fear of his displeasure, *she acknowledged*, that she executed said deed

freely and voluntarily and without any compulsion or influence of her said husband, and that she does not wish to retract it." The statute at that time (1831) provided, that, when the deed was acknowledged, the certificate should show, that the married woman "being examined by us privily and apart from her husband and having the writing fully explained to her, she, the said ——, acknowledged the same to be her act and deed and declared, that she had willingly signed, sealed and delivered the same, and that she wished not to retract it." (1 R. C. 365.) There seems to have been in this case no objection whatever made to the certificate, because the clause, "acknowledged the same to be her act and deed," was omitted. I find no such objection either in the arguments of counsel or the opinion of the court. It is certainly a much more serious objection than the one, that was made. From the opinion of Baldwin, J., there seems to have been only one objection made to the certificate, and that a very trivial one, which was thus disposed of by the Judge, who delivered the opinion of the court:—"There is no substance, I think, in the objection taken to the certificate of the justices of the privy examination of the *feme*. They certify, that she was examined 'separately and out of the hearing of her husband.' This, I consider, equivalent to the words used in the form given by the statute, ' privily and apart from her husband.' " This is all, that the court says about the certificate. The objection made was disposed of in a few sentences, as it deserved to be. This can not be regarded an authority holding, that the omission of the clause, " acknowledged the said writing to be her act and deed," is substantially supplied by the clause, " acknowledged that she executed said deed freely and voluntarily." If this could be regarded as an authority on this question, then everything overlooked or inadvertently done by an Appellate Court would have the force of authority. It has sometimes occurred, that a cause has been decided in an Appellate Court, when the court had no jurisdiction thereof, but the question of jurisdiction not having been argued by counsel was overlooked by the Court and jurisdiction assumed. Would any one say, that in such a case the court had rendered a decision which would be an

authority, that it had jurisdiction in such cases? I think the
point now relied on as having been decided in 2d Grattan
was in no way brought to the attention of the court and·was
therefore not passed upon in such a way as to make the de-
cision a rule of law. *Stevens* v. *Van Cleve,* 4 Wash. C. C .262.

In *Dennis* v. *Tarpenny,* 20 Barb. 371, it was decided, that
a certificate of acknowledgment of the execution of a deed
by a married woman stating, that on an examination before
the officer "separate ;and apart from her husband she ac-
knowledged the execution of the deed without fear or com-
pulsion from him" is a sufficient compliance with the statute
requiring the officer to certify upon an acknowledgment. of
a *feme covert,* that on "a *private* examination·apart from her
husband she executed the conveyance freely and without
any fear or compulsion from her husband."

In *Dundas* v. *Hitchcock,* 12 How. (U. S.) 269, Mr. Justice
Grier in delivering the opinion of the court, said:—" It is
objected also, that this acknowledgment is not in the very
words of the statute. " (of Alabama). " In place of the
words ' as her voluntary act and deed, freely ' it substitutes
the words, ' freely and of her own accord. ' That the words
of acknowledgment have the same meaning with those used
in the statute, it needs no argument to demonstrate. " It
seems to me very clear, that saying she " freely and of her
own accord" executed the deed, was the same as saying,
she executed it " as her voluntary act and deed freely. "

In *Dury* v. *Craig,* 5 Wall. 795, it was held, that a certifi-
cate by the proper officer, that a *feme covert* " being pri-
vately examined apart from and out of the hearing of her
husband acknowledged, " &c., is a sufficient compliance
with the Maryland statute of 1807, which requires the ex-
amination to be " out of the presence of " the husband.
" The expressions are equivalent. "

The only case precisely in point, which has been cited to
sustain this certificate is *Belcher* v. *Weaver,* 46 Tex. 293.
The requirement of the Texan statute was precisely the
same as ours, except that in the place of the words—"will-
ingly executed". are the words—"willingly signed, sealed
and delivered." The certificate in that case is almost pre-
cisely the same as·the certificate in this case. It is:—"She,

the said Ellen Belcher, acknowledged, that she signed said deed without any bribe, threat or compulsion from her husband, and that she does not wish to retract the same."— The court held the certificate to be a substantial compliance with the statute. In delivering the opinion of the Court Roberts, Chief Justice, said :—"It is contemplated by the enacting clause of the statute, that after the deed has been fully explained to her, and she has declared, that she signed it freely and willingly, she should then acknowledge the deed to be her act. This may be designed as a means of impressing on her, that she has not made it her deed by having signed it previously, but that she is now doing that, which makes it her deed by acknowledging it to be her act. In this certificate what is termed the declaration and the acknowledgment are blended together by the expression that she, Ellen Belcher, acknowledged, that she signed the said deed without any bribe, threat or compulsion from her husband."

In *Ellett* v. *Richardson*, 9 Baxt. 294, the court by Freeman, J., said : "It is settled by our decisions and laws to be the principle, on which most of them rest, that, a set form being prescribed, all implication as to every material fact made necessary by law is excluded." In *Watson* v. *Michael*, 21 W. Va. 568, the Virginia decisions as well as our own are referred to.

It was said in that case, that none of the cases required a literal compliance with the statute; but it is insisted in them, that every requisite of the statute shall be substantially complied with. The compliance with all the requirements save one will not justify the inference, that it also was complied with, although it might be thought, that there was but a shade of difference between that and some other, which was included. Each requisite has its purpose, which can not be effected by compliance with any of or all the others. It seems to me, that the purpose of each of the requisites is apparent. The purpose of the privy examination is to ascertain what the wife may have to say about the deed, while she is away from her husband, free from his control; she must therefore be examined privily and apart from him. In that privy examination she is first to be fully informed as to the nature of her act in executing the deed. She must

know what she is doing; therefore the deed must "be fully explained to her" by the officer. After this explanation, after she is fully informed of the consequence of ratifying the act, which she has performed, she has yet an opportunity to recede, when she is asked, if she acknowledges said deed to be her act, that is, in the definition of Worcester "to approve," "to own the validity of" the deed.' If she is willing to proceed after being thus fully informed as to the consequences of her act, now being free from the control of her husband she acknowledges the writing to be her act, that is, I now here in my privy examination approve and own the validity of it. But this was not regarded as sufficient. Although she may be at that moment free from the control of her husband, yet she may fear to meet him, if she should not acknowledge the deed, and for that reason may "acknowledge it to be her act." Therefore the statute requires a direct question to be asked her by the officer, a truthful answer to which will have the effect to discover, whether she signed and sealed the deed voluntarily or under the threats and coercion of her husband. This question does not relate to her state of mind, while she is undergoing the privy examination, but to her state, when she executed the deed; and therefore the question is asked her, if she willingly executed it. If she did, she "declares, that she willingly executed the same." Now then having had the writing fully explained to her and having acknowledged it to be her act and having declared, that she had, before she came to acknowledge it, "willingly executed the same," she still has one more opportunity to recede. If she recedes now, the act to pass the title to her property is incomplete. She has one moment to repent of what she has done, though she has gone this far and complied with every requirement but one necessary to divest her of her property. She must declare here and now, that "she does not wish to retract it"— she says :—I have had the writing fully explained to me; I know all about it; I acknowledge the writing to be my act— I approve it—I own the validity of it—I willingly executed it—I do not wish to retract it.

Is it not clear, that there must be a substantial compliance with every one of these requirements? Is any one of them

synonymous with any other? Can it then be said, that the words—"acknowledged, that she had willingly executed the same and does not wish to retract it"—are equivalent to the words—"acknowledged the said writing to be her act, and declared, that she had willingly executed the same and does not wish to retract it? Either the *acknowledgment* or the *declaration* is wanting, or they are both expressed in the word *acknowledged*. The reasoning of the Texas court is entirely unsatisfactory. If we could read the word "acknowledged" to mean, "she had acknowledged the writing to be her act" and then read the same word to mean, "declared" she had willingly executed the same and does not wish to retract it" we still would not be out of the difficulty; for "*had* acknowledged the writing to be her act" would not be sufficient, as that would refer to an act done before the privy examination; and we have decided, that the statute positively requires the acknowledgment of the writing to be her act to be made during the privy examination and not before. (*McMullen* v. *Eagan*, 21 W. Va. 233; *Laidley* v. *Knight*, 23 W. Va. 735.)

In *Pickens*, v. *Kniseley*, *supra*, p. 1, we held, that, where the married woman had "acknowledged the writing to be her act" during the privy examination, and then "declared that she *had* willingly *acknowledged* the same and did not wish to retract it," there was a substantial compliance with the statute; because the word "acknowledged" as there used meant "executed," as it manifestly referred to an act done previously to the privy examination. But here the word "acknowledged" evidently refers to a previous act on her part, and therefore the word, as here used, can only mean declared, and clearly shows, that during the privy examination she did not acknowledge the writing to be her act; and therefore that important requirement of the statute was entirely omitted as it was in *McMullen* v. *Eagan*, 21 W. Va. It is impossible to sustain the certificate, as it is fatally defective.

The judgment of the Circuit Court of Jackson county is reversed with costs, the verdict of the jury set aside, and the case remanded for a new trial.

REVERSED. REMANDED.